In the Matter of the Estate of JACOB G. DETTMER, Deceased.

Surrogate's Court, Kings County, October 20, 1941.

*McDermott & Turner* [*Charles J. McDermott* and *Aaron Frank* of counsel], for the City Bank Farmers Trust Company, as trustee, petitioner.

*Murray & Manson*, for the Orphan Asylum Society of the City of Brooklyn, remainderman.

*Morgan & Lockwood*, for The Brooklyn Institute of Arts and Sciences, remainderman.

*Walter Jeffreys Carlin*, for the Board of County Commissioners of Miami County, Ohio, and for Miami County, Ohio, remainderman.

*Olin, Clark & Murphy*, for the Empire Trust Company, as executor of and trustee under the will of Carolyn Dettmer Wood, deceased life beneficiary.

*Von Hofe & Sully*, for the National City Bank of New York as executor, etc., of Justus G. Dettmer, deceased life beneficiary, and for Mary Vogelsang, legatee under the will of Justus Dettmer, deceased life beneficiary.

*Peck, Shaffer, Williams & Gorman*, for Margaret S. Pugh and Otto Dettmer Steil, legatees and intestate distributees, and for Mary Caroline Nixon, life beneficiary under the will of Carolyn Dettmer Wood.

WINGATE, S. The present issue relates merely to the propriety of certain allegations in the answers of two respondents. Motions

have been made to strike out these allegations pursuant to the provisions of rule 103 of the Rules of Civil Practice, which authorize such action where matter contained in a pleading is frivolous or irrelevant.

The ultimate issue in the proceeding concerns the validity of a gift of a portion of the residue of the estate under the " sixth " item of the will. This item erected a trust for the lives of two children of the deceased, who have now died, and directed that upon their deaths, $170,000 of the principal should be paid to four named legatees. Subject to various specified express conditions, the balance of the principal was directed to " be paid over to the County of Miami, State of Ohio, or to such governmental authorities thereof as may be qualified to receive the same, for the purpose of acquiring a site and erecting thereon a hospital and equipping the same for the benefit of the residents of said County, to be known as the ' Dettmer Hospital ' * * *."

The item then proceeds to enumerate a considerable number of detailed " terms and restrictions " relating chiefly to the nature and characteristics of the site which is to be acquired, the manner of its selection, and the composition and mode of designation of the members of the governing board. The language of the will then continues:

" The title to said property shall be vested in the County of Miami, or in such other Board, body or corporation as the laws of Ohio or any special legislation which may be enacted for the purpose of carrying this bequest into effect, may require with reference to the title " of the property.

" I further direct that the said hospital, when built and equipped, shall be supported and maintained by the *people of the County of Miami* in the same manner as may be provided by law for the maintenance of County hospitals or of said hospital if provided for by special legislation, and that no part of the principal of my estate shall be applied to the establishment of an endowment fund or for the maintenance of said hospital in any manner, but that the portion of my estate given for the purposes of said hospital shall be entirely expended for the purchase of said lands, erection of buildings, the improvement and embellishment of the lands and the equipment of said hospital until the entire fund hereby created shall have been exhausted; as *I believe that a moderate charge, based upon the ability of the patient to pay, will make the hospital self-supporting*, the Board of Governors in control thereof may impose such charges for services rendered to patients in said hospital as they may, in their discretion, deem proper and advisable and adapted to the needs and ability to pay of each individual case.

" I direct that the acceptance of this bequest upon the conditions herein above specified shall be submitted to the voters of Miami County, Ohio, in the manner provided by general law or by special legislation enacted for the purpose, for the vote of the inhabitants of said County, and that if the said bequest upon the terms, conditions and restrictions herein provided be not accepted by such vote within two years from the time when said fund becomes available by reason of the expiration of the trusts hereinabove provided for, or should said provisions for the purposes of the said ' Dettmer Hospital ' fail to become effective because of the illegality thereof, or for any other reason, then and in that event said bequest shall lapse and said portion of my residuary estate shall thereupon be equally divided between " two named alternative legatees.

The language of the item further accords authority to the trustees " to permit and consent to such variation in the details of such organization   *   *   *   which shall not result in any substantial deviation from the purposes hereinabove expressed   *   *   *; the said hospital   *   *   *   may, if deemed desirable and consistent with the requirement that *the expense of maintaining said hospital shall, so far as necessary, be assumed by the County of Miami, Ohio, be organized as a body corporate*   *   *   *.''

The concluding statement reads: " It is   *   *   *   my desire that the People of the County of Miami, State of Ohio, shall enjoy the benefits of the foregoing provisions of my will, if they so desire, and if they shall manifest such desire by proper acceptance of such provisions in the manner herein specified, required by law and within the time hereinabove limited." (Italics supplied.)

In evaluating the propounded problem, it will be of value to seek to probe the mind of the testator as its operation is disclosed in the language he employed. His viewpoint is clearly mirrored in the language inserted in the will. He wished to benefit " the *People* of the County of Miami," particularly those residing in " my native City of Piqua and my adopted City of Troy," by giving to the community a new and fully equipped hospital. Whereas he was willing to pay for its cost of erection and equipment, he was unwilling to contribute to the cost of its subsequent maintenance since he was convinced " that a moderate charge, based upon the ability of the patient to pay, will make the hospital self-supporting." This was the gist of his thought. He was giving the hospital and equipment to the " People of the County of Miami " but he anticipated that " when built and equipped [it] shall be supported and maintained by [those] people " themselves, primarily from payment for the use of its facilities, but also " so far as necessary " " that the expense of maintaining   *   *   *   be assumed by the County of Miami."

The portions of the two answers at which the present motions are directed are substantially the same and allege on information and belief that the county of Miami is unable to support a hospital of the kind contemplated in the will and that by reason thereof the gift should be determined to be inoperative and void.

In their memoranda in opposition to the present motions, the objecting parties apparently concede the allegation of the amended answer of the county commissioners of Miami county, that at a special election the voters of the county voted to accept the gift of the hospital and assessed a special tax to raise funds for its maintenance, asserting that such tax would yield only about $54,000 a year, whereas opinion evidence would be submitted that the cost of annual maintenance would be approximately $300,000 a year.

Whether or not such a demonstration would possess any relevancy must turn on the intention of the testator respecting the stipulation hereinbefore noted, that the hospital, if and when erected should be maintained " by the *People* of the County of Miami." It is noteworthy that in his first reference to the subject of maintenance, he indicated his intention that the people themselves should support it. This is especially significant when it is coupled with the expression of his belief " that a moderate charge based upon the ability of the patient to pay, will make the hospital self-supporting." The logical conclusion is, therefore, that the method by which he anticipated that the sums necessary for maintenance would be supplied by the " People " was by their payment for the use of the facilities of the hospital. This interpretation appears fortified by the later reference to the assumption by the county of Miami of " the expense of maintaining said hospital * * * *so far as necessary*." Alternately stated, it was obviously the expectation of the testator that, when completed and equipped, the hospital should be self-sustaining by payments from the private citizens of the community served, for the use of its facilities, but in so far as the revenue from this source should prove insufficient, if at all, the county of Miami should assume the payment of the deficit.

It is obvious, therefore, that the values of the taxable property of the county or its revenues from a special tax assessed for the purpose of maintenance are subsidiary factors in any evaluation of whether the total revenue from this source when added to the receipts of the hospital for the use of its normal facilities will be sufficient to defray the cost of its maintenance and that the receipt of opinion evidence on the subject of the probable cost or on the probable return from the tax presently assessed as an auxiliary for its defrayal, would be a futile procedure.

This discussion is, however, beside the main point of the present motion which is essentially one of whether the expressions of the testator respecting the manner of use of the principal of the gift and the source of the cost of maintenance are reasonably construable as conditions, and if so whether future failure of the "People" of the county to pay the necessary cost of maintenance of the hospital after its completion, can be deemed to invalidate the gift at the present time. This is solely a question of the intention of the testator as deducible from the language of the will.

Assuming for the development of the discussion that the maintenance by the people is to be deemed a condition, yet this must inevitably be a condition subsequent, since the failure of performance in defraying the carrying charges of conduct can obviously not occur until something, namely, the hospital, has come into existence in respect of which such charges can accrue. "If the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may be as well done after as before the vesting of the estate, * * * then the condition is subsequent." ( *Underhill* v. *Saratoga and Washington R. R. Co.*, 20 Barb. 455, 459. See, also, *Matter of Baechler*, 121 Misc. 691, 700; affd., 215 App. Div. 797; *Matter of Lesser*, 158 Misc. 895, 898, 899.) Here, if the required action constitutes a condition at all, it can by no possibility be performed until a considerable period of time after the vesting and, therefore, obviously constitutes a condition subsequent.

It is elementary that where a gift is subjected only to a condition subsequent, the entire estate vests in the donee and is subject to divestment only at a later time upon the occurrence of the invalidating condition. (*Fowler* v. *Coates*, 201 N. Y. 257, 262; *Vail* v. *Long Island R. R. Co.*, 106 id. 283, 287; *Calvary Presbyterian Church* v. *Putnam*, 249 id. 111, 115; *Mott* v. *Richtmyer*, 57 id. 49, 66; *Beardslee* v. *Beardslee*, 5 Barb. 324, 330; *Weiss* v. *City of Mount Vernon*, 157 App. Div. 383, 387; affd., 215 N. Y. 657; *Matter of Johnson*, 133 Misc. 566, 567; *Matter of Smallman*, 141 id. 796, 802.) If, therefore, the language of the will is to be construed as imposing any condition in this regard whatsoever, the gift must be held to vest in the donee subject only to possible future defeasance upon the failure of the people of Miami county to defray the cost of maintenance of the hospital if and when erected.

The court is not, however, convinced at the moment that the testator intended to impose any express condition on the gift of the nature here asserted. It would appear at least arguable that his intention was summarized in the last paragraph of the sixth item hereinbefore quoted, to the effect that the only real

conditions imposed were that the residents of the county should manifest their desire to accept the gift within the specified period, and that the provisions respecting maintenance were intended merely as limitations on the manner of use of the avails of the gift, namely, that they should not be used for this purpose but solely for the acquisition of the necessary land and the erection and equipment of the building.

The sole legal reliance of the objectors is predicated on *Matter of Fletcher* (280 N. Y. 86). Its determination is not even remotely in point. It holds merely that where a charitable gift is made for a single specified purpose with a gift to another donee in the event that such purpose is incapable of fulfillment, the subject-matter of the gift may not be diverted to another purpose in defiance of the express directions of the will through the medium of section 12 of the Personal Property Law.

For the reasons hereinbefore developed, the court deems the questioned allegations of the answers irrelevant to the issues and the motions for their elimination will be granted.

Enter order on notice in conformity herewith.