In the Matter of the Estate of JACOB G. DETTMER, Deceased.

Surrogate's Court, Kings County, April 7, 1942.

*McDermott & Turner* [*Aaron Frank* of counsel], for the City Bank Farmers Trust Company, as trustee, petitioner.

*Olin, Clark & Murphy* [*T. Fergus Redmond* of counsel], for the Empire Trust Company, as executor of Carolyn D. Wood, deceased.

*Von Hofe & Sully* [*Thomas A. Sully* of counsel], for the National City Bank of New York, as executor of Justus G. Dettmer, deceased, and Mary Vogelsang.

*Peck, Shaffer, Williams & Gorman* [*Floyd C. Williams* and *Frank H. Shaffer, Jr.,* of counsel], for Margaret S. Pugh, Otto Dettmer Steil and Mary Caroline Nixon.

*Murray & Manson* [*Ralph E. Hemstreet* of counsel], for the Orphan Asylum Society of the City of Brooklyn.

*Walter Jeffreys Carlin* [*Pallister H. Feely* and *Hugh J. Donohue* on the brief], for the County of Miami and its county commissioners.

*Mudge, Stern, Williams & Tucker* [*John F. Brosnan, Harold G. Pickering* and *Richard S. Ritzel* of counsel], for the Brooklyn Institute of Arts and Sciences.

*John J. Bennett, Jr., Attorney-General,* for the State of New York.

McGarey, S.   This proceeding involves the construction of the sixth paragraph of decedent's will where, after giving the residue of his estate in trust for the lives of his son and daughter who were to receive the income, he provided:

" Upon the death of both my said daughter and son, then the entire principal of my residuary estate so held in trust, shall be disposed of as follows:

" Seventy-five thousand Dollars ($75,000) shall be paid to my niece, Minna Steil Coolidge, of Troy, Ohio, to whom I give and bequeath the same; and Seventy-five thousand Dollars ($75,000) shall be paid to my nephew, Otto D. Steil, of Troy, Ohio, to whom I give and bequeath the same   *   *   *.

" Ten thousand Dollars ($10,000) shall be paid over to the Brooklyn Institute of Arts and Sciences, to which I give and bequeath the same, and the sum of Ten Thousand Dollars ($10,000) shall be paid over to the Orphan Asylum Society of the City of Brooklyn, now at 1435 Atlantic Avenue, Brooklyn, New York, to which I give and bequeath the same.

"Subject to the conditions hereinafter contained, all of the rest, residue and remainder of said trust fund shall then be paid over to the County of Miami, State of Ohio, or to such governmental authorities thereof as may be qualified to receive the same, for the purpose of acquiring a site and erecting thereon a hospital and equipping the same for the benefit of the residents of said County, to be known as the 'Dettmer Hospital,' the said gift, however, is to be subject to the following terms and restrictions: * * * "

The conditions related to the following items: (a) The size and location of site; (b) location and surroundings of site; (c) architects and their selection; (d) board of directors or governors, their qualification, selection, duties, terms and number; (e) title to the property to be vested in county of Miami or such other board, body or corporation as laws of Ohio or any special legislation enacted for the purpose of effectuating bequest may require with reference to title to property of county hospitals or of Dettmer Hospital; (f) support and maintenance of hospital by people of Miami county in the same manner as provided by law for maintenance of county hospitals or of Dettmer Hospital, if provided for by special legislation; (g) no part of principal to be applied to establishment of an endowment fund or for maintenance of hospital, "but that the portion of my estate given for the purposes of said hospital shall be entirely expended for the purchase of said lands, erection of buildings, the improvement and embellishment of lands and the equipment of said hospital until the entire fund hereby created shall have been exhausted;" testator stating his belief that a moderate charge based upon ability of patient to pay would make hospital self-supporting; (h) and authority to board of governors to impose a charge for hospital service.

Then follows the provision which together with the foregoing quoted portions of the will gives rise to the present controversy: "I direct that the acceptance of this bequest upon the conditions hereinabove specified shall be submitted to the voters of Miami County, Ohio, in the manner provided by general law or by special legislation enacted for the purpose, for the vote of the inhabitants of said County, and that if the said bequest upon the terms, conditions and restrictions herein provided be not accepted by such vote within two years from the time when said fund becomes available by reason of the expiration of the trusts hereinabove provided for, or should said provisions for the purposes of the said 'Dettmer Hospital' fail to become effective because of the *illegality thereof*, or for any other reason, then and in that event said bequest shall lapse and said portion of my residuary estate shall thereupon be equally divided between the Brooklyn Institute

of Arts and Sciences and the Orphan Asylum Society of the City of Brooklyn, now at 1435 Atlantic Avenue, Brooklyn, New York."

Thereafter decedent provided that if the provisions for the erection of the hospital should become operative, and for any unforeseen contingency it would be impossible or impracticable to carry into effect all the details provided with reference to the organization of the hospital, he authorized his executor and trustee or its successor to permit and consent to such variation in the details or organization, the appointment of the board of governors or other matters connected with the creation and erection of the hospital, its government and control as the executor and trustee may deem to be in substantial conformity with the testamentary directions, and which shall not result in any substantial deviation from the purposes hereinabove expressed or detract from the efficiency of the organization and management of the hospital.

He further authorized the hospital or its directors to be organized as a body corporate in accordance with the laws of Ohio, and that title to the property vest in such corporation, and authorized his trustee to determine whether the requirements " laid down for the acceptance of said gift to the County of Miami, State of Ohio, have been fully or substantially complied with, and if they shall not have been fully or substantially carried out to the satisfaction of my said trustee then acting, within the period of two years hereinabove specified, my said trustee shall have the right, in its discretion, to make distribution of my estate between the said Brooklyn Institute of Arts and Sciences and the said Orphan Asylum Society of the City of Brooklyn, now at 1435 Atlantic Avenue, Brooklyn, New York, as hereinabove provided; but said Brooklyn Institute of Arts and Sciences and the said Orphan Asylum Society of the City of Brooklyn, now at 1435 Atlantic Avenue, Brooklyn, New York, shall neither of them have the right to question the discretion of my trustee in waiving or consenting to the modification of any of the details hereinabove provided in reference to the organization and management of said hospital, nor shall the County of Miami, or any of its officials, or any other person or persons on its or their behalf, have the right to question the exercise of discretion by my said trustee in refusing to waive or to permit the modification of any of the requirements imposed by this Will with reference to the organization, government or management of said hospital."

He then states that these provisions have been included in his will in accordance with similar provisions contained in former wills and a long set purpose on his part, and states that they may in the meantime have been anticipated by the establishment of

local institutions and concludes the sixth paragraph of his will with the following statement: " It is, nevertheless, my desire that the People of the County of Miami, State of Ohio, shall enjoy the benefits of the foregoing provisions of my Will, if they so desire, and if they shall manifest such desire by proper acceptance of such provisions in the manner herein specified, required by law and within the time hereinabove limited."

The surviving son, Justus G. Dettmer, died July 16, 1940, and the surviving daughter, Carolyn D. Wood, died January 15, 1941, and upon her death the trust terminated.

On January 30, 1941, the commissioners of Miami county advised the attorney for the trustee that they were willing to carry out and abide by all the conditions set forth in paragraph sixth of the decedent's will, and thereafter applied to the Legislature for the enactment of special legislation necessary for the purpose of authorizing the commissioners of Miami county to submit the question of the acceptance of the bequest, and the Legislature of Ohio passed a special act on April 16, 1941, approved by its Governor on April 17, 1941, authorizing a special election, which was duly held in the county of Miami on September 9, 1941, and a majority of the electors of said county voted yes on the following question: " Shall the gift, devise and bequest of Jacob G. Dettmer, providing for the building and equipping of a hospital in Miami County under the conditions and under the provisions as set forth in the last will and testament of said Jacob G. Dettmer, deceased, be accepted."

An executor's accounting was had and a decree entered on January 21, 1937, in which the executor applied for a construction of the third subdivision of paragraph eighth of the decedent's will in which all the parties in the present proceeding or their predecessors in interest were parties.

The petition prayed for the judicial settlement of the account of the executor and the construction of the third subdivision of paragraph eighth of the decedent's will, and the citation on such settlement required the parties thereto to show cause why the account should not be settled and why a construction should not be had of the third subdivision of paragraph eighth of the will. The decree construed such clause to require that all realized appreciation in securities or other property resulting from any sale of the same or other disposition should be allocated to income without deducting any decreases resulting from losses on other property and should be paid to the life beneficiaries. The account which was settled showed that the trust had been erected by the executor transferring to itself the net balance of the residuary estate.

In this proceeding the petitioner and Miami county claim that the hospital gift is good and valid and Miami county further asserts that the prior decree settling the account of the executor is *res judicata;* the petitioner further claims that even if the gift might be invalid under the New York law it was valid under the Ohio law.

The court holds that on the question of the binding effect of the accounting decree raised by the county of Miami that such decree is not *res judicata* on the question here presented for determination. The question here presented was not raised or considered and such decree is only binding as to the issues directly or by necessary implication raised and decided in that proceeding. The trust itself was valid. The only question is whether the gift of the remainder is valid.

The question presented in this proceeding is not whether the trust was invalid, but whether the remainder vested within the time permitted by the statute of perpetuities. It would be unfair to hold that parties were bound by previous decrees, when no question was presented nor were they apprised of the fact that any such issue was being considered. (See *Bailey* v. *Buffalo L., T. & S. D. Co.,* 213 N. Y. 525.)

The court also holds that the validity or invalidity of the remainder provision is to be determined by the law of the State of New York, and the laws of Ohio do not enter into consideration. If the remainder vested at the date of the death of the survivor of the life beneficiaries the gift is good. If there was no vesting the gift is bad, and the validity of the testamentary disposition of the remainder is to be determined by the laws of this State which was the domicile of the testator. If any period intervenes between the termination of the trust estate and the vesting of the remainder gift in the county of Miami, the remainder is invalid, but if there is no period intervening, it is good.

No question is presented in this case involving a gift to a foreign trustee or beneficiary to be administered in a foreign jurisdiction such as was presented in the cases cited and urged by the petitioner in support of this proposition.

This leaves for determination the issue as to the validity of the disposition of the remainder. Is the provision for the Dettmer Hospital valid as contended by the petitioner and Miami county, or is it invalid because it unlawfully suspends the power of alienation as contended by the representatives of testator's children and the alternate beneficiaries, the Brooklyn charities?

The intent of the testator as expressed in his will should be made effective unless it clearly contravenes the statutory restriction

on the suspension of the power of alienation. This intent is to be gathered from the words used by the testator in his will and a construction which would render that intent valid is to be preferred over one which would render it invalid. The court struggles to preserve the testamentary intent of the testator and surrenders to nothing short of absolute compulsion. Separating the good from the bad should be a question of surgery and not mutilation.

In determining the intent of the testator, where the will is drawn by an attorney experienced in and skilled in the law and practice involving testamentary disposition, consideration should be given to the state of the law as it was considered to be at the time of the execution of the will.

The court should not defeat the intention of the testator by taking parts of his will, separate from their context, nor should the court defeat the intention of the testator by taking parts of principles enunciated in prior decisions apart from their context and joining such parts together to state a principle of law which the writers of such decisions never intended and would not recognize. Each decision must be considered in the light of the actual facts of each case. Intention should not depend upon isolated words. The court should not sweep aside detailed, carefully thought out testamentary provisions in a frantic effort to establish invalidity, but rather should endeavor to uphold and effectuate the clearly expressed intent of the testator.

It is apparent and indeed it is the law of the case that it was the intent of the testator to establish a fund for the purchase of land, the construction and equipment of a hospital to be maintained by the county of Miami. This was his primary and principal desire and intent, and only if the gift were not accepted or if such intent could not be effectuated or was illegal or invalid for any other reason, did he provide for an alternate gift to the two Brooklyn charitable institutions. It was clearly his intent that his distributees should not share in the residue of the remainder, he having provided for his children during his lifetime and having clearly expressed his intent both in his will and particularly in his codicil where he said: " * * * it being my intention that during the life of my said children, or the survivor of them, the whole net income derived from my residuary estate mentioned in paragraph Sixth of my will and left in trust for the benefit of my children, shall be paid entirely to my children or the survivor of them, and that in no event, even though the principal may be impaired, shall any segregation or reservation of principal or interest for the benefit of the ultimate remainder interests be permitted, it being my intention that the entire principal of my estate during

the lives of my children, shall constitute the *corpus* of the fund left in trust for the benefit of my children, and that the remainder interests therein, for the benefit of the ultimate legatees and beneficiaries, shall abate if necessary, and their interests shall always be entirely subservient to the prior right of my children to use all of the income from the entire principal of my estate during their lives without any limitation thereon or deduction therefrom for the benefit of any person or corporation who or which shall receive an interest in my estate after the death of my children."

It is the duty of the court, therefore, to endeavor to give effect to the declared and easily ascertained intent of this testator.

This court on October 20, 1941, in deciding a motion addressed to the pleading, stated: " He wished to benefit ' the *People* of the County of Miami,' particularly those residing in ' my native City of Piqua and my adopted City of Troy,' by giving to the community a new and fully equipped hospital." (177 Misc. 349, 352.)

It is the law of this State that a gift coupled with a burden requires acceptance by the beneficiary. The time during which such acceptance might be made does not suspend the power of alienation, and the acceptance when made relates back to the date when the gift becomes effective. (See *Oliver* v. *Wells*, 254 N. Y. 451, where the Court of Appeals held that acceptance of gift carrying an obligation must be made within a time that is equitable in the light of all the circumstances.) Such time may be very long, if injury to others will not result in delay. It may be short, if failure to act promptly may work injury or hardship, but in any event an adequate opportunity to investigate the cost and extent of the burden imposed as compared with the value of the benefit and to acquire that knowledge of the facts without which choice, if made, would be unintelligible, should be permitted to any beneficiary. If there were no provision fixing a definite time for acceptance in the decedent's will, the county of Miami might reasonably be entitled to more than two years in which to make its decision and, therefore, considering the size of the estate, the value of the gift and the extent of the burden, the provision requiring acceptance within two years is rather a limitation of the time within which the acceptance can be made. To hold that the time which must lapse for rejection or acceptance to take place suspends the power of alienation would make ineffective for any reason gifts upon conditions which must be accepted by the beneficiary.

Examining this will it is apparent that the testator desired to limit the time within which acceptance could be had. It is not only possible but probable that a longer period of time than two years might elapse before acceptance was made or required to be made in the absence of any limitation in the will.

Nowhere in the will did the decedent condition his gift upon the acceptance by the voters of Miami county. All that he did was to direct that its acceptance be submitted to the voters of Miami county and if they failed to accept it within two years, he provided for a gift over. This provision was a limitation of the time within which the acceptance was required to be made. The testator made no disposition of the income subsequent to the death of the second life beneficiary, and within the two-year period during which acceptance was required. There is nothing in the will from which it can be reasonably inferred that the gift was upon condition of acceptance within two years, but rather that the gift was made effective upon the termination of the trusts, subject to being divested upon failure to accept the same within such two-year period.

It is the court's opinion that the condition in the will is not a condition precedent; that there was a vested gift to the county of Miami upon the termination of the trust subject to being defeated if the gift was not accepted within the two-year period or should the provisions for Dettmer Hospital fail to become effective because of the illegality thereof or for any other reason. If, however, the gift were not accepted or it failed to be effective for illegality or any other reason, then the alternate gift in remainder to the Brooklyn charities would be effective under the principle enunciated in the case of *Cruikshank* v. *Home for the Friendless* (113 N. Y. 337).

Those asserting the invalidity of the provision rely upon *Matter of Roe* (281 N. Y. 541). The court does not believe that that case applies.

The court holds that the submission of the question providing for an additional tax outside of the ten-mill limitation for the support and maintenance of the hospital was for a period of only three years is immaterial. Acceptance of the gift upon the terms and conditions specified in the will was all that was required.

The court, therefore, construes the sixth paragraph of the decedent's will as follows:

1. The gift in remainder to the county of Miami, State of Ohio, upon the termination of the trust is vested.

2. Such gift being coupled with the burden which the beneficiary may assume requires acceptance by the beneficiary.

3. The decedent has limited the time within which acceptance must be made and the manner in which it must be made and has required that the acceptance be by the vote of the inhabitants of the county of Miami, Ohio, within two years from the time when the gift became available by reason of the expiration of the prior trusts.

4. The county of Miami has accepted the gift in the manner specified in the will or required by law and within the time limited in the will.

5. The acceptance of the gift relates back to the time when the title vested in the county of Miami, namely, the termination of the prior trusts.

6. The gift to the county of Miami, State of Ohio, is not void for remoteness of vesting or in violation of the rules against perpetuities and does not suspend the absolute ownership of the property for a period longer or other than the termination of not more than two lives in being at the time of the death of the decedent.

7. The gift to the county of Miami, State of Ohio, in paragraph sixth of the decedent's will is not void for remoteness and does not violate the rule against perpetuities and, therefore, is valid under the laws of the State of New York.

8. If, however, the gift to the county of Miami were invalid or failed to become effective for any reason, the balance of the residuary estate would have been payable in equal shares to the Brooklyn Institute of Arts and Sciences and the Orphan Asylum Society of the City of Brooklyn.

9. Such balance in no event would be payable to decedent's distributees as in the case of intestacy.

10. As intimated in the prior decision of this court (177 Misc. 349) the only real condition imposed upon the county of Miami was that the voters should manifest their desire to accept the gift in the manner and within the period limited, and the other provisions respecting the selection of the site, the erection and equipment of the hospital and its management and maintenance were merely limitations on the manner of the use of the avails of the gift and when such acceptance upon the terms and conditions specified has been made and the avails of the gift have been so used there is no further condition or limitation upon the title of the county of Miami.

Proceed accordingly.